**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :   Chapter 11
In re:                                                          :
                                                                :   Case No. 07-36299 (cgm)
    MAL DUNN ASSOCIATES, INC.,                            :
                                                                :
                                Debtor.                   :
                                                                :
----------------------------------------------------------------X

**MEMORANDUM DECISION DENYING MOTION OF OSHA DATA/CIH, INC. "FOR AN ORDER, PURSUANT TO 11 U.S.C. §§ 105(a), 1141 AND 1142, IN AID OF CONFIRMATION OF DEBTOR'S CHAPTER 11 PLAN SEEKING CLARIFICATION THAT OSHA DATA MAY PROCEED WITH STATE COURT ACTION AGAINST NON-DEBTOR, STEPHEN DUNN"**

**A P P E A R A N C E S :**

Jay Teitelbaum, Esq.
TEITELBAUM & BASKIN, LLP
3 Barker Avenue
White Plains, New York
*Attorneys for Osha Data/CIH, Inc.*

Donald S. Campbell, Esq.
DANZIG FISHMAN & DECEA
One North Broadway
White Plains, New York
*Attorneys for Stephen Dunn*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

      Osha Data/CIH, Inc. (hereafter, "Osha Data") filed this motion "for an order, pursuant to 11 U.S.C. §§ 105(a), 1141 and 1142, in aid of confirmation of Debtor's Chapter 11 plan seeking clarification that Osha Data may proceed with state court action against non-debtor, Stephen Dunn." (ECF Doc. No. 318; hereafter, the "Motion"). The Motion is opposed by Stephen Dunn. (ECF Doc. No. 341; the "Opposition"). By the Motion, Osha Data seeks an order from the Court

stating that no prior orders entered in this proceeding preclude Osha Data from prosecuting its action against Stephen Dunn, pending in the Superior Court of New Jersey Law Division – Essex County (the "State Court Action"). A hearing was held on the Motion and Opposition on April 28, 2009. For the reasons expressed by the Court at the April 29, 2009 hearing, and as more fully explained below, the Motion is denied.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2) because the Motion requests clarification of a Chapter 11 plan confirmed by this Court. Osha Data has questioned whether this Court has jurisdiction, as part of a Chapter 11 plan, to release or enjoin a dispute between two nondebtors based upon pre-petition conduct, and this argument is addressed in the "Discussion" section, *infra*.

## BACKGROUND

**A. The State Court Action**

The State Court Action is based on a List Management Agreement dated June 29, 2007, between Osha Data as "Owner" and Mal Dunn Associates, Inc. ("Mal Dunn" or "Debtor") as "Manager." Stephen Dunn signed the agreement for Mal Dunn as president. Stephen Dunn did not sign the agreement individually. According to the List Management Agreement, Osha Data sought to market certain lists that it owns, and Mal Dunn agreed to act as the managing agent for the purpose of marketing and renting the lists. Paragraph 4.a. of the List Management Agreement states:

> MANAGER will collect all rental fees ("Proceeds") and will act as trustee to hold the Proceeds for OWNER's benefit and to distribute the Proceeds in accordance

> with this Agreement. MANAGER designates its employee, Mr. Stephan [sic] T. Dunn, to act as co-trustee who will be the individual principally responsible for the distribution of the Proceeds. MANAGER may not change the designation of the co-trustee without prior written approval by OWNER.

(ECF Doc. No. 318, Exh. B). The State Court Action was commenced against Stephen Dunn only on August 29, 2007, five days after the Debtor filed this Chapter 11 petition. In the State Court Action Osha Data acknowledges that the List Management Agreement is "between Plaintiff and Mal Dunn," and further notes Mal Dunn's Chapter 11 filing. Osha Data alleges that as of July 31, 2007 its share of trust funds under the List Management Agreement was $21,305.48. Telling are the last four numbered paragraphs of the State Court Action, in which Osha Data alleged the following:

> 12. Pursuant to the Agreement, <u>Mal Dunn was to mail</u> distribution of Plaintiff's share of the Trust Funds no later than August 25, 2007.
>
> 13. On information and belief, <u>Mal Dunn did not mail</u> those funds and Plaintiff has not received them.
>
> 14. On information and belief, additional Trust Funds have been received <u>by Defendant</u> since July 31, 2007 and will continue to be collected after the filing of this Complaint.
>
> 15. <u>Defendant is in breach</u> of his fiduciary duties owed to Plaintiff as co-trustee of the Trust Funds.

(emphasis added). Osha Data demands compensatory and punitive damages, costs and attorney's fees, interest, and "interlocutory and permanent injunctions compelling Defendant to account for all Trust Funds, compelling Defendant [to] segregate all Trust Funds and prohibiting Defendant from commingling Trust Funds with other funds[.]"

Schedule F to the Debtor's petition lists an unliquidated claim owing to "OSHA" for $109,276.49, noting that this sum was subject to adjustment; Schedule H lists Stephen Dunn as a co-debtor to "OSHA." (ECF Doc. No. 37).

### B. <u>Termination Agreement</u>

By stipulation so-ordered November 20, 2007, Osha Data, the Debtor and Committee agreed to terminate the List Management Agreement and consented to relief from stay to permit Osha Data to terminate or otherwise act with respect to the List Management Agreement (ECF Doc. No. 109; hereafter, the "<u>Termination Agreement</u>").  In the Termination Agreement, the Debtor agreed to return to Osha Data all of its lists, databases and related information, and agreed to provide an accounting of all activities of the Debtor for one year prior to the petition date concerning Osha Data's property, and a similar accounting for all post-petition activity.

### C. <u>Global Settlement</u>

The Termination Agreement resulted from Osha Data's objection to the Debtor's proposed settlement (the "<u>Global Settlement</u>") with the Official Committee of Unsecured Creditors, Stephen Dunn, Rosemary Faver, Dunn Database Marketing, Inc. ("<u>Dunn Database</u>") and others.  Osha Data objected to the assignment of the List Management Agreement to a third party as part of the Global Settlement. (ECF Doc. No. 70).  The caption of the joint motion of the Debtor and Committee for approval of the Global Settlement, as well as the ECF docket text, specifically stated that the Debtor and Committee sought relief "pursuant to Bankruptcy Code Section 105(a), Barring any Party Having Received Notice of Settlement Motion and Related Hearing from Asserting <u>Estate Claims</u> Released Under Settlement Agreement." (ECF Doc. No. 62) (emphasis added).  The affidavit of service reflects that a copy of the Global Settlement motion was served on "OSHA" (ECF Doc. No. 63), and Osha Data definitely received notice because it filed an objection.  A complete copy of the Global Settlement and a proposed order approving the Global Settlement were filed with the motion.  The proposed order contained the following provision, which was approved by the Court on October 26, 2007:

- 4 -

> **ORDERED,** that except as expressly permitted or otherwise specifically provided by the Settlement Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtor or the Assets [of the Debtor in the Asset Purchase Agreement] (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor or the Assets, the ownership of the Assets prior to the closing, or the transfer of the Assets are forever barred, estopped and permanently enjoined from asserting against the Purchaser or the Dunn Parties [a term that includes Stephen Dunn], their successors or assigns, their property, or the Assets, such persons' or entities' interests[.]

(ECF Doc. No. 62, Exh. B; ECF Doc. No. 96). The Global Settlement, together with an asset purchase agreement providing for the sale of the Debtor's assets to Dunn Database, formed the backbone of the Debtor's Chapter 11 plan, providing for payment of the lesser of 100% of allowed unsecured claims, without interest, or $3 million, paid quarterly over five years. The payment was secured by, among other things, the personal guarantee of Stephen Dunn.

**D.  Proof of Claim**

On December 24, 2007, following this Court's approval of the Termination Agreement and Global Settlement, Osha Data filed an unsecured, nonpriority claim for $200,000. As a basis for the claim, Osha cited "list rentals." In the cover letter under which Osha Data submitted the proof of claim to the Bankruptcy Court for filing, Osha Data references two enclosures. The first is the proof of claim; the second is "List Management Agreement dated 6/29/07." Thus, Osha Data submitted a proof of claim in this bankruptcy case based upon the same List Management Agreement that it is relying upon in the State Court Action against Stephen Dunn. Osha Data acknowledges that it is receiving payment on this claim, though Osha Data contends that it has received only $2,000 to date.[1]

---

[1]  At the Court's request, Osha Data provided a copy of its proof of claim. The proof of claim was marked received by the Clerk's Office on December 26, 2007, but the claim does not appear on the claims register of the

- 5 -

E. **Plan and Confirmation Order**

The Debtor's Second Amended Chapter 11 Plan (ECF Doc. No. 136, Exh. A; hereafter, the "Plan") was confirmed by order dated March 11, 2008. (ECF Doc. No. 178; hereafter, the "Confirmation Order"). In relevant part, the Confirmation Order provided:

> 17. **Moratorium, Injunction and Limitation of Recourse For Payment**. From and after the Effective Date, all Persons who have held, hold, or may hold Claims against, or Interests in, the Debtor are permanently enjoined from taking any of the following actions against the Estate, the Debtor, the Committee, the Creditor Trust or the Creditor Trustee or any of their respective managers, officers, directors, agents, attorneys, investment bankers, financial advisors, or other professionals, or any of their respective property or other assets on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Lien or encumbrance; and (d) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan….
>
> 18. **Exculpation and Limitation of Liability**. Notwithstanding any provision of the Plan, no holder of a Claim or Interest shall have any right of action against the Debtor, the Estate, the Committee or the Creditor Trust, or any of their respective managers, officers, directors, agents, attorneys, investment bankers, financial advisors, other professionals, or any of their respective property and assets for any act or omission in connection with, relating to or arising out of the Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Creditor Trust, the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence.
>
> * * *
>
> 20. **RELEASES BY CREDITORS**. ON THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM SHALL BE DEEMED TO HAVE RELEASED AND DISCHARGED (I) THE RELEASED PARTIES [defined in Paragraph 19 as the Debtor, the Estate and the Committee]; (II) ALL MANAGERS, OFFICERS, DIRECTORS, AGENTS, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS EMPLOYED BY THE RELEASED PARTIES; AND (III) ALL ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND OTHER PROFESSIONALS EMPLOYED BY THE RELEASED PARTIES, OF AND FROM ANY CLAIM OR CAUSE OF ACTION, WHETHER KNOWN OR

---

Bankruptcy Court. The Debtor has treated Osha Data's proof of claim as if properly filed, and for purposes of this decision the Court assumes that Osha Data holds a valid proof of claim.

UNKNOWN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE AND EACH HOLDER OF A CLAIM WHO VOTES TO ACCEPT THE PLAN COVENANTS NOT TO SUE ANY OF THE OTHER PARTIES IDENTIFIED IN (I) THROUGH (IV) ABOVE; <u>PROVIDED</u>, <u>HOWEVER</u>, NO SUCH PARTIES SHALL BE RELEASED AND DISCHARGED FROM OBLIGATIONS UNDER THE PLAN OR OF ANY CLAIM OR CAUSE OF ACTION ARISING FROM OR RELATED TO ACTS OR OMISSIONS INVOLVING WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR FRAUD; <u>PROVIDED</u>, <u>FURTHER</u>, <u>HOWEVER</u>, THAT NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL BE DEEMED A RELEASE OF ANY VIOLATIONS OF STATE AND/OR FEDERAL CRIMINAL STATUTES.

21. **Released Causes of Action**. From and after the Effective Date, all rights, claims, and Causes of Action of the Debtor or the Estate, whether known or unknown, asserted or not asserted, Scheduled or not Scheduled and whether arising under the Bankruptcy Code or other applicable law … are forever released and discharged.

(emphasis in original). This language in the Confirmation Order was also included in Article IX of the Plan, and in Article V, Section G of the Debtor's second amended disclosure statement dated December 14, 2007 (ECF Doc. No. 136; hereafter, the "<u>Disclosure Statement</u>"). Osha Data received notice of the Plan and Disclosure Statement. (ECF Doc. No. 153). Osha Data did not file an objection to the Plan and did not appeal the Confirmation Order.

## **DISCUSSION**

Osha Data asserts: (1) the Court had no jurisdiction to release its claim; (2) the releases and injunctions are not enforceable under Second Circuit case law, specifically *In re Metromedia Fiber Network*, *Inc.*, 416 F.3d 136 (2d Cir. 2005) ("*Metromedia*"); (3) the releases go too far and are not supported by findings in the Confirmation Order; (4) Osha Data did not have notice that the releases in the Plan would extend to the State Court Action; and (5) even if the release was valid, it would not extend to the State Court Action because that claim is against Stephen Dunn in his personal capacity, for breach of fiduciary duty.

- 7 -

A. **Jurisdiction to Bar State Court Action**

Osha Data argues that the Court had no jurisdiction to release or enjoin a dispute between two nondebtors based upon pre-petition conduct. Osha Data argues that its claims "are independent of any claims that Osha Data may have against the Debtor," and are asserted against Stephen Dunn individually, and not in his capacity as an officer or director of the Debtor. Motion, ¶¶7, 9. The Court disagrees. Osha Data filed the State Court Action against Stephen Dunn five days after the Debtor filed a Chapter 11 petition. The State Court Action is based upon an agreement between the Debtor and Osha Data, wherein the Debtor designated "its employee," Stephen Dunn, as the co-trustee. The Debtor's schedules reflect a claim to Osha Data based upon the agreement, and Osha Data filed a proof of claim against the Debtor based upon the same agreement that is the subject of the State Court Action. That proof of claim has been allowed, and Osha Data has and will continue to receive distributions under the Plan on account of that claim.

B. *Metromedia* **and Equitable Mootness**

Osha Data's most forceful argument is that release would violate the Second Circuit's standards under *Metromedia* for permitting third party releases. In *Metromedia*, two creditors appealed the bankruptcy court's decision to confirm a plan with a provision shielding nondebtors from suit by creditors. One of the nondebtors in that case, the Kluge Trust, agreed to waive $150 million in claims against the debtor, convert $15.7 million in secured claims to equity, invest $12.1 million in the debtor, and purchase $25 million of the debtor's unsold common stock. In return, the Kluge Trust would receive 10.8% of the reorganized debtor's common stock and a comprehensive release of any claims "arising out of or in connection with any matter related" to the debtor or its subsidiaries, and creditors were permanently enjoined from suing the Kluge

- 8 -

Trust and certain other parties. 416 F.3d at 141. The Second Circuit noted that it previously upheld third party releases where the injunction "plays an important part in the debtor's reorganization plan." *Id*. (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992)). The court then observed: "While none of our cases explains when a nondebtor release is 'important' to a debtor's plan, it is clear that such a release is proper only in rare cases." *Id*. The Second Circuit explained its reluctance to approve nondebtor releases:

> [A] nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity. Here, the releases protect against any claims relating to the debtor, "whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured."

*Id*. at 142. *Metromedia* observed that third-party releases have been approved where (1) the estate received substantial consideration, (2) the enjoined claims were channeled to a settlement fund, rather than extinguished, (3) the enjoined claims would directly impact the debtor's reorganization due to indemnification or contribution claims that would arise, and (4) where the plan otherwise provided for full payment of the enjoined claims. *Id*. The Second Circuit cautioned that the analysis is "not a matter of factors and prongs," and that: "No case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique." *Id*.

It should be noted that the releases at issue in this case do not provide for "blanket immunity" and do not purport to release liability due to, *e.g.*, fraud, willful misconduct, gross negligence, or violation of any criminal statute. No party objected to the release provisions in this case prior to entry of the Confirmation Order. The Debtors filed notice of the occurrence of the effective date of the Plan on March 14, 2008. (ECF Doc. No. 189). In the Opposition,

- 9 -

Stephen Dunn argues that (1) Dunn Database has now fully complied with all of its obligations under the Global Settlement, (2) he and his wife, Rosemary, have drawn no salary or other compensation since entering into the Global Settlement because Dunn Database does not have sufficient revenue to support such compensation, and (3) Stephen and Rosemary Dunn have personally borrowed $800,000 for operating capital to ensure that Dunn Database can meet its financial obligations.

While *Metromedia* is best known for establishing rough guidelines by which third-party releases should be evaluated, the confirmation order was not remanded for further findings because the appeal was found to be "equitably moot." 416 F.3d at 143.

> Equitable mootness is a doctrine distinct from constitutional mootness, though they have been discussed in the same breath.… Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented. *See, e.g., In re UNR Indus.,* 20 F.3d 766, 769 (7th Cir.1994) ("There is a big difference between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome ('equitable mootness').");  *see also MAC Panel Co. v. Va. Panel Corp.,* 283 F.3d 622, 625 (4th Cir.2002) ("[E]quitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." (emphasis omitted)); *In re Envirodyne Indus.,* 29 F.3d 301, 304 (7th Cir.1994) (defining the doctrine as "merely an application of the age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties").

*Id.* at 143-144. The *Metromedia* appeal was equitably moot because the appellants "sought no stay of the confirmation order, and sought no expedited review in this appeal, which was filed over a year ago." *Id*. at 144-145. The appellants argued that the Second Circuit could still provide relief without "unraveling the Plan," because the appellants could be permitted "in all equity to pursue any claim barred by the releases." *Id*. The Second Circuit disagreed, stating: "In the absence of any request for a stay, the question is not solely whether we *can* provide relief without unraveling the Plan, but also whether we *should* provide such relief in light of fairness

- 10 -

concerns." *Id*. at 145 (emphasis in original). *Cf. Travelers Indem. Co. v. Bailey*, No. 08-295, 2009 WL 1685625 (June 18, 2009) (circuit court erred by considering, as part of 2008 appeal, whether bankruptcy court orders issued in 1986 exceeded jurisdiction; orders became final on direct review over two decades ago and were not properly before the court).  In *In re Crystal Oil Co.*, 854 F.2d 79, 82 (5th Cir. 1988), a creditor objected to confirmation but failed to seek a stay so reviewing court could consider plan's propriety before implementation led third parties to make commitments in reliance on the plan.  The Fifth Circuit dismissed the appeal because in view of the creditor's failure to seek a stay, the comprehensive change of circumstances that occurred, and the requested relief's impact on the plan, it would have been "plainly inequitable" to consider the merits of the appeal. *Id*.  Equitable mootness did not apply in *In re Karta Corp.*, 342 B.R. 45, 52 (S.D.N.Y. 2006), where the effective date had not passed and the appellant sought an expedited appeal on the second business day after entry of the confirmation order, "in stark contrast" to the conduct of the appellants in *Metromedia* and *Crystal Oil*.

      This Court is of the view that the doctrine of equitable mootness bars relief to Osha Data under the facts of this case and at this stage in the proceedings.  There is no dispute that Osha Data received timely notice of the Global Settlement, Disclosure Statement, Plan and Confirmation Order.  Osha Data objected to the release provisions in the Plan and Confirmation Order for the first time more than a year after entry of the Confirmation Order and the effective date of the Plan.  To sustain Osha Data's belated challenge to the Plan and Confirmation Order would be inequitable and unfair to Stephen Dunn, who claims that he fully complied under the Global Settlement in reliance upon the continuing validity and effectiveness of the release provisions.

C. **Support for Findings**

Related to the arguments under *Metromedia*, Osha Data contends that there are no findings in the Confirmation Order to support release of the State Court Action. Yet Osha Data acknowledges in paragraph 66 of its Motion that: "Following a competing bid from a third party, certain persons or entities, including Stephen Dunn, apparently contributed approximately $3.5 million to purchase substantially all of the assets of the Debtor." In connection with the approval of that sale, the Court made the following findings:

> BB.  The Parties have demonstrated, and the Court hereby finds and concludes, that **the compromise set forth in the Settlement Agreement provides substantial benefits to the Debtor's estate and its creditors, which include without limitation**, (i) a payment of the lesser of $3,600,000 or 100% of allowed unsecured claims, to be paid in the amount of $3,000,000 quarterly over four (4) years, and in the amount of $600,000 quarterly in the fifth (5th) year, without interest, and to be secured by (a) first priority liens upon all assets of Dunn Database, (b) a third mortgage lien on commercial real property owned by [a separate entity named Millworks, Inc.], (c) personal guarantees of the Dunns, (d) a second mortgage lien on the Dunns' personal residence, subject to an existing first mortgage and subordinate to an additional $250,000 credit line to be obtained and used to fund Dunn Database, or in the event of the sale of the Dunn's personal residence, a comparable mortgage on the property to be mutually agreed upon as substitute collateral and (e) confessions of judgment executed by the Dunns and Dunn Database; (ii) the funding of an account in the amount of $250,000 to satisfy priority and administrative claims and a claims reconciliation process, that will include the confirmation of a plan of liquidation and the creation of a liquidating trust; (iii) the settlement and release of all claims and/or potential claims and causes of action of the estate against the Dunn Parties; (iv) the transfer of the Assets to, and assumption of post-petition administrative operating liabilities by, Dunn Database; and (v) a release of all causes of action against non-insider creditors….
>
> * * *
>
> EE.  The Movants have further demonstrated that the Settlement Agreement is the product of arms-length negotiation and not collusion or fraud. **This Court further finds and concludes that the paramount interests of the estate and its creditors is served by the Settlement Agreement and not by litigation or the continued administration of the Debtor's case. This Court finds and concludes that the releases to be given pursuant to the Settlement Agreement and the Stipulation and Releases are appropriate, reasonable and consistent with the terms and purposes of the Settlement Agreement and are not overbroad and are necessary in light of the circumstances in this case.**

- 12 -

\* \* \*

GG. The Movants have demonstrated that the transfer of Assets attendant to the implementation of the Settlement Agreement is appropriate and should be approved. The Movants have demonstrated both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the transfer of assets pursuant to Bankruptcy Code Sections 363(b) and (f). The transfer of the Debtor's assets is in the best interests of the estate and its creditors. The consideration for the transfer is reasonable and appropriate.

(emphasis added). These findings were contained in a document entered by the Court on October 27, 2007 and captioned:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
WITH RESPECT TO JOINT MOTION OF DEBTOR AND COMMITTEE
FOR ENTRY OF ORDER (I) PURSUANT TO BANKRUPTCY RULE
9019(A), APPROVING SETTLEMENT AGREEMENT AMONG DEBTOR,
COMMITTEE AND DUNN PARTIES, (II) PURSUANT TO BANKRUPTCY
CODE SECTIONS 363(B), (F) AND (M) AND BANKRUPTCY RULES 2002 AND 6004,
AUTHORIZING TRANSFER OF ASSETS OF DEBTOR FREE AND CLEAR OF LIENS,
CLAIMS AND ENCUMBRANCES TO FACILITATE CONSUMMATION OF
SETTLEMENT AGREEMENT, (III) PURSUANT TO BANKRUPTCY CODE SECTION
365 AND BANKRUPTCY RULE 6006, AUTHORIZING ASSUMPTION AND
ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS, AND
FIXING CURE AMOUNTS AND (IV) PURSUANT TO BANKRUPTCY CODE
SECTION 105(A), BARRING ANY PARTY HAVING RECEIVED NOTICE OF
SETTLEMENT MOTION AND RELATED HEARING FROM ASSERTING ESTATE
CLAIMS RELEASED UNDER SETTLEMENT AGREEMENT**

(ECF Doc. No. 07). The Plan and Confirmation Order repeatedly refer to the Global Settlement and the Court's October 26, 2007 approval.

### D. Osha Data Received Notice

As stated above, Osha Data received notice of the Global Settlement and of the plan and disclosure statement. Osha Data even objected to a portion of the Global Settlement, but did not object to the release provisions. Osha Data asserts, correctly, that the Termination Agreement does not provide for a release of Stephen Dunn from any obligations under the List Management Agreement. That is because, as discussed above, Stephen Dunn received a release in the Global

Settlement and order approving the Global Settlement.  Osha Data did not object to that portion of the Global Settlement.

Osha Data argues that the plan and disclosure statement do not specifically reference the State Court Action or a release of Osha Data's claim against Stephen Dunn, and that the confirmation order "is devoid of any specific release of Stephen Dunn with respect to the State Court Action."  Osha Data, as the holder of a claim, must have (or should have) understood from reading Article 9.6 of the Plan that its claim against Stephen Dunn would be released.  Article 9.6 states:

> **RELEASES BY CREDITORS. ON THE EFFECTIVE DATE, <u>EACH HOLDER OF A CLAIM SHALL BE DEEMED TO HAVE RELEASED AND DISCHARGED</u> (I) THE RELEASED PARTIES; (II) <u>ALL MANAGERS, OFFICERS, DIRECTORS</u>, AGENTS, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS <u>EMPLOYED BY THE RELEASED PARTIES</u>; AND (III) ALL ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND OTHER PROFESSIONALS EMPLOYED BY THE RELEASED PARTIES, <u>OF AND FROM ANY CLAIM OR CAUSE OF ACTION, WHETHER KNOWN OR UNKNOWN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE</u> ….**

(underlining emphasis added).  Article 9.2 of the plan states:

> **9.2 Legal Binding Effect.** The provisions of the Plan shall bind all holders of Claims and Interests and their respective successors and assigns, whether or not they accept the Plan.

Osha Data also points to the fact that the Debtor "specifically knew about the pending State Court Action at all relevant times and chose not to identify the claims asserted therein as claims which were being released under the Plan or [Global Settlement]."  Osha Data reasons that "[i]t would have been simple for the Debtor to specifically identify the State Court Action as one of the claims to be released and enjoined," and concludes that the decision not to do so was a

tactical one that "deprived Osha Data of a reasonable opportunity to object to the scope of any release applying to the State Court Action." The exact same reasoning can be applied to Osha Data's failure to act – it would have been simple for Osha Data to file a limited objection to confirmation of the Plan, to the extent the releases in the plan would apply to the State Court Action. The Court finds that Osha Data received appropriate notice under the circumstances.

**E.  The Releases Apply to the State Court Action**

Osha Data argues that the releases in the Global Settlement, Plan and Confirmation Order would not bar the State Court Action for two reasons. First, Osha Data argues that the State Court action is against Stephen Dunn in an individual and fiduciary capacity, rather than as an officer, director or employee of Mal Dunn, and thus outside the scope of the release. The List Management Agreement was between Osha Data and Mal Dunn. Stephen Dunn signed the List Management Agreement as the President of Mal Dunn. Mal Dunn designated Stephen Dunn as "its employee" who would act as co-trustee. The Court concludes that while the State Court Action may technically be against Stephen Dunn as an individual and as a fiduciary, it is primarily seeking recovery against him as an officer, director or employee of the Debtor, and within the scope of the release in the Plan and Confirmation Order. As discussed above, it is within the jurisdiction of this Court to enjoin such an action.

Second, Osha Data argues that the release in the Plan and Confirmation Order do not apply to "any claim or cause of action arising from or related to acts or omissions involving willful misconduct, gross negligence or fraud," and concludes that the State Court Action survives because it asserts a claim against Stephen Dunn for alleged breach of fiduciary duty. The State Court Action alleges only that Stephen Dunn received certain trust funds and "is in breach of his fiduciary duties owed to [Osha Data] as co-trustee" of those funds. Osha Data does

not allege in the State Court Action or in this motion that Stephen Dunn's alleged "breach of fiduciary duty" is attributable to any willful act, gross negligence or fraud. Not every breach of fiduciary duty involves a willful act, gross negligence or fraud. *See In re Hyman*, 502 F.3d 61, 69 (2d Cir. 2007) ("misappropriation and breach of fiduciary duties apparently do not, under New York law, consistently require proof of a culpable mental state"); *Cf. In re Bear Stearns Litig.*, 870 N.Y.S.2d 709, 728-729 n. 6 (N.Y. Sup. Ct. 2008) (noting that Delaware law allows limitation on directors' personal liability for breaches of fiduciary duty, but not for breaches of the duty of loyalty, acts or omissions not in good faith or involving intentional misconduct or knowing violation of law and similar conduct); *Horn v. 440 East 57th Co.*, 547 N.Y.S.2d 1, 5 (N.Y. App. Div. 1st Dep't 1989) (dismissing as preempted by the Martin Act claims for breach of fiduciary duty and negligent misrepresentation: "Fairly construed, both these causes of action omit the element of a deceitful intent on defendant's part and substitute therefor the existence of a fiduciary relationship of trust and confidence."). The Court holds that the releases in the Plan and Confirmation Order are binding upon Osha Data and bar continuation of the State Court Action.

## CONCLUSION

For the foregoing reasons, Osha Data's Motion is denied. The Court will issue a separate order consistent with this decision.

Dated: Poughkeepsie, New York
     June 18, 2009          /s/ Cecelia Morris
                               CECELIA G. MORRIS
                               UNITED STATES BANKRUPTCY JUDGE